UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL G. DEBOCK,<br><br>                    Plaintiff,<br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security, [1]<br><br>                    Defendant. | Case No. 3:12-cv-05508-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On November 10, 2008, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications disability beginning May 20, 2008, due to a bipolar disorder. See Administrative Record ("AR") 19, 172. Both applications were denied upon initial administrative review on January 16, 2009, and on reconsideration on March

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**
ORDER - 1

20, 2009.  See AR 19, 80, 83, 89, 91.  A hearing was held before an administrative law judge ("ALJ") on August 26, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  See AR 38-75.

In a decision dated November 23, 2010, the ALJ determined plaintiff to be not disabled.  See AR 19-33.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 20, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").  See AR 1; see also 20 C.F.R. § 404.981, § 416.1481.  On June 14, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.  See ECF #3.  The administrative record was filed with the Court on October 9, 2012.  See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; and (3) in rejecting the lay witness evidence in the record.  For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

ORDER - 2

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 3

resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

ORDER - 4

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

### A. Dr. Cagle

Plaintiff argues that because the ALJ did not discuss "at all" the medical findings provided by William Cagle, M.D., his treating physician, it is not known whether Dr. Cagle's opinions were considered by the ALJ. ECF #14, p. 10.  But as pointed out by defendant, the ALJ did discuss evidence from Dr. Cagle. See AR 22, 24.  Further, it is not exactly clear as to which "opinions" plaintiff is referring to here, as Dr. Cagle did not offer any that would be of specific relevance to the ALJ's assessment of plaintiff's alleged disability, that is, opinions as to his ability to perform work-related activities.[3] See AR 249-52, 358-59, 368-69, 372-73, 375-76, 378-81, 383-84, 387-90, 393-400.

Plaintiff goes on to argue that while Dr. Cagle "repeatedly discussed" his social withdrawal and social isolation in his treatment notes, and that those notes show his condition periodically deteriorated and was not controlled by medication, the ALJ did not find he had any limitations in regard to interacting with co-workers or supervisors. ECF #14, p. 10.  But Dr.

---

[3] See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability").

ORDER - 5

Cagle's comments are based on plaintiff's own self-reportd, and as discussed in greater detail below, the ALJ did not err in discounting plaintiff's credibility concerning his subjective complaints.[4]  Nor again did Dr. Cagle actually find plaintiff had any specific work-related limitations based on those self-reports, including any restriction on interacting with others.  See 249-52, 358-59, 368-69, 372-73, 375-76, 378-81, 383-84, 387-90, 393-400.  Accordingly, the Court finds no error on the part of the ALJ here.

      B.      <u>Dr. Neims and Dr. Chalstrom</u>

Plaintiff also contests the ALJ's following findings:

> Dan Neims, Psy.D., completed a psychological/psychiatric evaluation form on May 19, 2009 (Exhibit 10F).  Dr. Neims did not give the claimant an "established diagnosis" but indicated that the claimant had a psychiatric disorder not otherwise specified by history, alcohol abuse in reported remission, and a possible schizoaffective disorder with bipolar features.  At the time of his examination, the claimant reported he had been sober 2.5 months while living at [Kitsap Mental Health Services] KMHS.  Dr. Neims found the claimant appeared cautious, distrustful, and to have poor impulse control.  His mental examination, however, indicated that his short and long term memory were intact.  Dr. Neims found the claimant to be anxious but cooperative with latency of speech and difficulty assembling his thoughts: needing to pause and reorganize his thoughts after losing his focus.  Aside from such observations and findings from the claimant's mental health examination, Dr. Neims' opinion was based almost entirely on the claimant's self-reporting -- despite his acknowledgement that the claimant was a poor historian (Exhibit 10F/4).  Other than the claimant's difficulty completing serial threes and serial sevens, and incorrect interpretation of the meanings of "rolling stones gather no moss" and "people in glass houses should not throw stones," Dr. Neims had little objective findings to substantiate such opinions as, that during a normal workday, the claimant would have marked difficulty with verbal expression of anxiety and fear, social withdrawal, motor retardation, exercising judgment and making decisions, interacting appropriately in public contacts, responding appropriately to and tolerating the pressure and expectations of a normal work sending [sic], controlling his physical or motor movements, and maintaining appropriate behavior.  Without further substantiation for such findings and with heavy reliance upon the claimant's self reporting when there are causes for concern with the

---

[4] See <u>Tonapetyan</u>, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); <u>see also</u> <u>Morgan</u> 169 F.3d at 601.

ORDER - 6

> claimant's credibility, Dr. Neims' opinion in regard to the severity of the claimant's condition is given little weight. (Exhibit 10F).
>
> . . .
>
> Dr. [William J.] Chalstrom's [June 15, 2010] opinion, which was based on the most thorough examination of the claimant's mental health and his medical records, is given great weight in regard to his functionality (Exhibit 9F).  Dr. Chalstrom opined based on the claimant's testing that the claimant is capable of understanding, remembering, and carrying out short and simple instructions, but that given his borderline intelligence range would probably have some difficulty with more complex instructions.  Dr. Chalstrom further opined that there was no reason to think that the claimant could not maintain attention and concentration throughout a normal workday and that he would be quite capable of going back to doing landscape work.  This is consistent with the claimant's own reporting to Dr. Chalstrom that he was going to perform such work for his uncle after his examination with Dr. Chalstrom (Exhibit 9F).  The claimant's limitation to work which involves only understanding, remembering, and carrying out 1-3 step tasks and to work which involves few workplace changes and few workplace decisions is thus also based in part on Dr. Chalstrom's opinion.

AR 29-31.  Specifically, plaintiff argues the ALJ erred in failing to explain how she resolved the conflict between Dr. Chalstrom's opinion and that of Dr. Neims.  But the ALJ did so.  That is, as set forth above the ALJ provided specific – and as discussed herein, legitimate – reasons as to why she found Dr. Chalstrom's opinion carried more weight, including the psychological testing and mental status examination he performed. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (where examining physician's opinion is based on independent clinical findings, ALJ has discretion to disregard conflicting opinion provided by second examining physician).

With respect to the ALJ's rejection of the opinion Dr. Neims provided on the basis that it was based almost entirely on plaintiff's own self-reporting, plaintiff asserts Dr. Neims had other objective evidence to rely on, including the interview he conducted, his review of plaintiff's mental health records, and the psychological testing he aperformed.  Leaving aside the fact that the ALJ, as just discussed, is entitled to disregard an examining physician's opinion in favor of a

ORDER - 7

conflicting opinion from another examining physician that has independent support in the record, the Court finds the ALJ still committed no error here.  First, as noted by the ALJ, the mental status examination results Dr. Neims obtained overall were fairly unremarkable. See AR 314, 316-19.  The psychological testing Dr. Neims performed, furthermore, revealed at most "mild" results. See AR 309.  The interview itself also clearly is based on plaintiff's self-reporting.  As for the review of medical records, both psychologists did this, and given the lack of more objective clinical support for the more marked mental functional limitations Dr. Neims found, this in itself is not a sufficient basis for overturning the ALJ's findings here.

      C.      Dr. Robinson and Dr. van Dam

Lastly in regard to the objective medical evidence in the record, plaintiff argues the ALJ erred in finding that:

> Dr. [John F.] Robinson . . . completed a mental residual functional capacity assessment form on January 8, 2009 (Exhibit 5F).  On this form, Dr. Robinson opined the claimant was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms (Exhibit 5F).  Dr. Robinson similarly opined that the claimant was moderately limited in his ability to perform at a consistent pace without an unreasonable number and length of rest periods (Exhibit 5F).  Despite his opinion regarding these moderate limitations, Dr. Robinson opined the claimant would do best with routine work and could do simple work: that he may have occasional problems with concentration, persistence, and pace, but would be able to persist at work tasks within normal limits (Exhibit 5F).  He also opined that the claimant should not work closely with the general public or many coworkers (Exhibit 5F).  On March 30, 2009, Carla van Dam, Ph.D., affirmed Dr. Robinson's opinion (Exhibit 7F).  The opinions of Dr. Robinson and Dr. Van [sic] Dam are found consistent with the medical evidence of record and given substantial weight.  As a result, the claimant is limited to work which involves only understanding, remembering, and carrying out 1-3 step tasks; to work which involves no more than superficial and occasional contact with the general public (meaning the claimant is not able to respond to demands and requests of the general public but can refer such demands and requests to others to respond to and can work in the same room or vicinity as the general public); and to work which involves few workplace changes and few workplace decisions.  The undersigned finds that just because the claimant has indicated a preference to not work a normal workday and work

ORDER - 8

> week does not mean he is incapable of so doing.  Thus, the claimant is found capable of completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods if he is limited to work within his residual functional capacity.

AR 30.  Plaintiff argues that as non-examining medical sources, Dr. Robinson and Dr. van Dam "should have been afforded less weight than the opinions of the other treating and examining" medical sources in the record, by which presumably plaintiff means those of Dr. Cagle and Dr. Neims. ECF #14, p. 13.  As explained above, however, Dr. Cagle did not actually provide any opinions regarding plaintiff's ability to perform work-related activities, and the ALJ gave valid reasons for rejecting the opinion of Dr. Neims.  The assessment provided by Drs. Robinson and van Dam, furthermore, is largely consistent with that of Dr. Chalstrom, which also as discussed above, the ALJ did not err in adopting instead of that of Dr. Neims.  Thus, again the ALJ did not err in his evaluation of the medical evidence in the record.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

ORDER - 9

Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  See id.

The ALJ in this case discounted plaintiff's credibility in part because plaintiff had "not been forthright regarding his earnings and work activity."  AR 27.  In addition, the ALJ noted plaintiff's "medical records indicate that he was aware he could not make more than $3,393 per reporting period without losing his cash benefits from [the Washington State Department of Social and Health Services] DSHS."  Id.  These are valid reasons for discounting a claimant's credibility, neither of which plaintiff has specifically challenged.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may consider claimant's motivation and issue of secondary gain); Smolen, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements and other testimony that "appears less than candid").[5]

The ALJ also discounted plaintiff's credibility for the following reasons:

---

[5] See also Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 10

> . . . The claimant consistently reported not following his prescription regimen, which is indicative of him not considering his health condition severe enough to require said medication (e.g., Exhibit 12F).  For example, the claimant reported to Dr. Neims in May of 2009 that he had not been taking his Abilify and Lamictal for the past three months (Exhibit 10F).  Additionally, the claimant testified that since he quit taking his medication a month ago he had been down in the dumps, been out of contact with his uncle, and not working.
> . . .

AR 27.  These too are valid reasons for finding plaintiff to be not entirely credible.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, and noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to follow prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony").

Plaintiff correctly points out that the ALJ may "not draw any inferences" about his symptoms and their functional effects from his failure to consistently take medication, "without first considering any explanations" that he "may provide, or other information in the case record, that may explain" that failure. Social Security Ruling ("SSR") 1996 WL 374186 *7.  But while there are some reports from plaintiff in the record where he alleges experiencing adverse side effects due to his prescribed medication and an absence of benefit therefrom (see AR 246, 266, 268, 297-98, 310, 378-81, 383, 387, 389, 398-99), there also is substantial evidence of symptom improvement without significant side effects by plaintiff's own report, and of plaintiff being non-compliant with medication for other, less legitimate or unexplained reasons (see AR 232, 249, 251, 257-59, 261, 268, 270, 298-99, 314-15, 352, 358, 363, 368, 372-73, 375-78, 380, 383-84, 387-89, 392, 394-95, 398-99).  The ALJ, therefore, was not remiss in failing to find the record supports plaintiff's claims of lack of medication efficacy or significant adverse side effects.

ORDER - 11

Plaintiff also correctly points out that the Ninth Circuit has recognized that discounting a claimant's credibility based on failure to pursue consistent mental health treatment is inherently problematic. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (stating fact that such treatment is not sought "until late in the day" is improper basis upon which to discount accuracy of a medical source's assessment, noting further that those suffering from depression often do not recognize their condition reflects potentially serious mental illness) (citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid rejection of claimant's assertions concerning depression due to failure to seek psychiatric treatment, finding that chastising of individual who have mental impairment for exercise of poor judgment in seeking rehabilitation to be questionable practice).  Here, though, the substantial weight of the evidence in the record fails to show plaintiff lacks insight or judgment to the extent that it significantly interferes with his ability to seek mental health treatment. See AR 231, 243, 247-51, 298, 314, 316-18, 357-58, 368, 373, 376, 379-381, 383-85, 387-90, 395-99.  Indeed, plaintiff himself admitted he could see the benefits of medication. See AR 258-59.

The ALJ discounted plaintiff's credibility as well for the following reasons:

> . . . Initially at the hearing, the claimant's representative alleged that his uncle wouldn't hire him back to do landscaping because he wouldn't let him use power tools or climb ladders anymore.  On questioning by the undersigned, the claimant indicated that he thought his uncle would contact him if he needed help with his landscaping business and that his uncle had indicated to the claimant that "times were tough right now."  It was because of this lack of work, not the claimant's inability to perform such work, that, the claimant testified, he believed his uncle had not recently contacted him.  This belief is substantiated by a statement from the claimant's uncle, which is addressed in greater detail below (Exhibit 11E). . . .

AR 27-28.  Plaintiff argues the ALJ erred in so finding here by not giving more weight to the testimony of his uncle, but instead adopting his own beliefs as to why he had not worked for his uncle.  But given that as discussed in greater detail below, the ALJ did not err in also discounting

ORDER - 12

the credibility of his uncle's testimony, and the fact that it is the sole duty of the ALJ to resolve any conflicts and ambiguities in the evidence, the Court declines to overturn this stated basis for finding plaintiff to be less than fully credible.  Plaintiff further argues that his uncle's statement that "I don't want to tell him this but professionally, if he was not my nephew, I would not be able to have him work for my company the way he is now" (see AR 222), shows that "perhaps" his uncle wanted to spare his feelings (ECF #14, p. 17).  But this is largely speculative, and thus is not sufficient to establish reversible error here.

In addition, the ALJ discounted plaintiff's credibility because:

> . . . The claimant indicated to Dr. Chalstrom that he used marijuana up until three years previous to their discussion in June of 2010 (Exhibit 9F).  This is at odds with the claimant's girlfriend's reporting that the claimant had used marijuana up until May of 2010 and with the claimant's testimony (Exhibit 10E).  The claimant indicated to Dr. Chalstrom that he has a girlfriend but does not see her regularly, whereas she reported seeing him every day (Exhibit 9F, 10E).  The claimant reported to Dr. Neims that he received two DUIs in 2007, but reported to health care providers at KMHS that he had only received one DUI when he was 21 (Exhibit 3F, 10F).  Yet, records from the West Sound Treatment Center indicate that the claimant was also arrested for a DUI on February 4, 2008, and that he had to have a substance use evaluation at this facility for legal reasons on December 10, 2008 (Exhibit 13F).

AR 28.  Contrary to plaintiff's contention, the record shows he was not consistent in reporting his substance abuse history, particularly in regard to the number of DUIs he had.  See AR 239, 247, 313, 412.  While there is some indication in the record that plaintiff has been noted to be a poor historian (see AR 297, 312), there is no indication that this is due to a mental impairment (see AR 297, 312), as opposed to an unwillingness to be more clear regarding his history, of which there may be some evidence (see AR 249-50).  Plaintiff also points to one comment in the record that he was "legitimately confused" and seemed to have "some difficulty with recall or a memory impairment."  AR 258.  Overall, though, the record largely fails to support the existence of such difficulties, or show that they prevented him from being a better historian concerning his

ORDER - 13

substance abuse or otherwise. See AR 231, 243, 247-51, 298, 314, 316-18, 357-58, 368, 373, 376, 379-381, 383-85, 387-90, 395-99.

Lastly, the ALJ found plaintiff to be not fully credible on the following basis:

> . . . The claimant's allegations of being tired and not having any energy are not substantiated to be of a severity which prevents him from working. KMHS treatment records from April 7, 2007, indicate the claimant "is pretty much the same . . . He is working 20 hours a week and doing some skateboarding. He does not tend to miss work. He does not have to push himself to go to work. He does not find work hard to do and is able to keep his drive at work and going to work. He describes mostly anhedonia and boredom." (Exhibit 12F).

AR 28. Plaintiff does not specifically challenge this reason for discounting his credibility, nor does the Court finds it to be unsupported in the record. See AR 387; Smolen, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements).[6] As such, the ALJ's adverse credibility determination in this case was proper.

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ, though, need not cite the specific record as long as "arguably germane reasons" for dismissing the lay testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the dismissal. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

---

[6] See also Carmickle, 533 F.3d at 1161 n.2 (issue not argued with specificity in briefing will not be addressed); Paladin Associates., 328 F.3d at 1164 (by failing to make argument in opening brief, objection to district court's order was waived); Kim, 154 F.3d at 1000 (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 14

Plaintiff challenges the ALJ's findings regarding the lay witness evidence in the record from plaintiff's uncle, which reads in relevant part:

> The claimant's uncle's opinion in regard to the effects of the claimant's medication (e.g., "Some weeks he can't work because the medication makes him too tired and sleepy. He has been on medications where he couldn't drive due to fatigue") is given very little weight because the claimant has often indicated he has not been compliant with his medication and that he does not do some activities simply because he does not feel like it, not because he is unable (e.g., showering, going to work, etc. as described elsewhere herein) (Exhibit 11E). Additionally, the claimant specifically denied having any fatigue to healthcare providers at Peninsula Community Health Services in December of 2008 (Exhibit 14F). The claimant's uncle's statement also indicates that his perspective has a tendency to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limits the claimant alleges ("Now, as I see it and because I love him, I am as forgiving as possible.") (Exhibit 11E). The claimant's uncle does not give a specific reason as to why "depending on the nature of things" he would not want him on a high ladder or to use power tools. He only indicates that this is because he "loses the instructions, can't stay on task" – which are reflected to the degree made credible by the medical evidence of record in the claimant's residual functional capacity . . . The claimant's uncle indicated that, "There are certain things I would need to be present for when [the claimant] works because he wouldn't be able to stay on task; another difficulty is he can jump off task onto something completely different without finishing the first task. I can give him a list of things with the first being a priority. He can't focus on them." While such observations are consistent with the claimant being limited to work which involves only understanding, remembering, and carrying out 1-3 step tasks and to work which involves few workplace changes and few workplace decisions, for the above reasons, the claimant's uncle's opinion is nonetheless given little weight. (Exhibit 11E)

AR 28-29. The Court agrees it was improper for the ALJ to discount his uncle's statement on the basis that "his perspective has a tendency to be colored by affection for" him and "a natural tendency to agree with the symptoms and limitations" he alleges. AR 28. Plaintiff's uncle did state that because he loves plaintiff, he is "as forgiving as possible." AR 221. But this appears to be more in reference to the work plaintiff performed for him, and not in regard to his description

ORDER - 15

of plaintiff's symptoms and limitations. See id.[7]

As discussed above, however, the ALJ did not err in discounting plaintiff's credibility on the basis of lack of compliance with his medication, and thus this is a valid basis for rejecting his uncle's testimony as well. See Valentine, 574 F.3d at 694 (where claimant's testimony has been properly rejected, lay witness testimony that is similar thereto may be rejected for same reasons used to reject claimant's testimony).[8]  The ALJ also pointed to plaintiff's report that "he does not do some activities simply because he does not feel like it, not because he is unable" (AR 28), which also undercuts his uncle's testimony concerning his symptoms and limitations.  Nor has plaintiff argued or shown that the limitation to work involving only simple tasks, along with few workplace changes and decisions, is at odds with his uncle's statement that he cannot stay on task or focus on a list of things to do.  Accordingly, the Court finds that overall the ALJ properly evaluated the lay testimony from plaintiff's uncle.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

---

[7] Further, the mere fact that plaintiff may have a close relationship with his uncle is not alone a sufficient basis for rejecting his uncle's lay witness testimony. See Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) (stating friends and family members in position to observe claimant's symptoms and daily activities are competent to testify as to claimant's, and finding ALJ in that case erred in rejecting lay witness testimony on basis of that witness's close relationship with claimant); see also Valentine v. Commissioner of Social Security, 574 F.3d 685 (9th Cir. 2009) (stating evidence of specific secondary gain motive, as opposed to being "interested party" in abstract, could suffice to reject testimony of claimant's spouse).

[8] In Valentine, the Ninth Circuit held in relevant part:

> [The lay witness's] testimony of her husband's fatigue was similar to [the claimant's] own subjective complaints.  Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [the claimant's] allegations.'  In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.

Id. at 694.

ORDER - 16

DATED this 27th day of June, 2013.

                                                  */s/ Karen L. Strombom*
                                                  Karen L. Strombom
                                                  United States Magistrate Judge

ORDER - 17